Filed 10/29/24  P. v. Leiva CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANDRE LEIVA,<br><br>Defendant and Appellant. | F084427<br><br>(Super. Ct. No. BF187979A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Gregory A. Pulskamp, Judge.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Chung Mi Choi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted Andre Leiva (appellant) of two counts of being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)),[1] unlawful possession of ammunition (§ 30305, subd. (a)(1)), and misdemeanor resisting a peace officer (§ 148, subd. (a)(1)).  The jury also found true allegations that appellant was armed with a deadly weapon for purposes of the "Three Strikes" law (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii)), and the trial court found appellant had two prior strike convictions. (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1).)  The court sentenced appellant to 25 years to life in state prison.

On appeal, appellant contends the trial court erred in denying his motion to suppress evidence pursuant to section 1538.5, alleging the People failed to establish the traffic stop that led to his arrest was supported by reasonable cause.  He also claims the trial court's excusal of an African-American prospective juror for cause was motivated by racial bias, in violation of his state and federal constitutional rights to a fair and representative jury, Code of Civil Procedure section 231.7, and the California Racial Justice Act of 2020 (CRJA).  Finding no error, we affirm.

## BACKGROUND

The evidence produced at trial is not relevant to the issues raised on appeal, so we only summarize it briefly.  In short, officers conducted a traffic stop on a car driven by appellant.  A female passenger was sitting in the front passenger's seat.  During a search of the car, officers located a backpack on the front passenger's side floorboard.  Inside the backpack, officers found two loaded handguns, 6.8 grams of methamphetamine, four grams of cocaine, appellant's identification card, and prescription medication in appellant's name.  When an officer told appellant to place his hands behind his back, he

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

rushed toward the officer, ripped off his radio, and fled on foot. Another officer chased after appellant and was able to place him in handcuffs.

The Kern County District Attorney's Office filed an information charging appellant with two counts of possession of a controlled substance while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a); counts 1 and 2), two counts of carrying a loaded and unregistered firearm in a vehicle (§ 25850, subd. (c)(6); counts 3 and 4), two counts of carrying a concealed firearm in a vehicle with a prior felony conviction (§ 25400, subds. (a)(1), (c)(1); counts 5 and 6), two counts of being a felon in possession of a firearm (§ 29800, subd. (a)(1); counts 7 and 8), unlawful possession of ammunition (§ 30305, subd. (a)(1); count 9), and misdemeanor resisting a peace officer (§ 148, subd. (a)(1); count 10). As to counts 1-9, the People alleged appellant was armed with a deadly weapon during the commission of the offense within the meaning of sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii).[2] The People also alleged appellant had two prior strike convictions. (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1).)

After the close of evidence, the trial court granted the People's motion to dismiss counts 3 and 4 in the furtherance of justice pursuant to section 1385, subdivision (a).

The jury found appellant guilty on counts 7-10 and found the armed with a deadly weapon allegation true as to counts 7-9. However, the jury was unable to reach a verdict on counts 1, 2, 5, and 6, and the trial court declared a mistrial as to those counts.[3] In a

---

[2]     Pursuant to these provisions, a defendant with two or more prior strike convictions whose current offense is not a serious or violent felony must still be sentenced as a third strike offender if "[d]uring the commission of the current offense, the defendant … was armed with a firearm or deadly weapon." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii); see *People v. Johnson* (2015) 61 Cal.4th 674, 681–682.)

[3]     The trial court subsequently granted the People's motion to dismiss counts 1, 2, 5, and 6, pursuant to section 1385, subdivision (a).

3.

bifurcated proceeding, the trial court found true the allegation appellant had two prior strike convictions.

The trial court sentenced appellant to indeterminate terms of 25 years to life on counts 7, 8, and 9, in accordance with the Three Strikes law. The court ordered the sentence on count 8 to run concurrently to count 7 and stayed the sentence on count 9 pursuant to section 654, subdivision (a). As to count 10, the court imposed a determinate sentence of one year to run concurrently with count 8.

## DISCUSSION

### I. The Trial Court Did Not Err in Denying Appellant's Motion to Suppress Evidence Because the Traffic Stop was Supported by Reasonable Cause.

Appellant contends the trial court should have granted his section 1538.5 motion to suppress evidence, arguing law enforcement lacked reasonable cause to conduct an enforcement stop on his vehicle. We conclude the traffic stop was reasonable under the Fourth Amendment based on an officer's testimony that he observed appellant speeding.

#### A. Background.

Prior to trial, appellant filed a motion to suppress evidence pursuant to section 1538.5. Before the motion hearing began, appellant clarified he was only challenging the basis for the traffic stop, and not the ensuing search of his vehicle. The parties also stipulated there was no warrant for the traffic stop.

An officer testified that on August 5, 2021, around 7:15 p.m., he was on patrol in Bakersfield conducting "gang suppression." At this time, it was still light out. As the officer was driving eastbound, he observed a vehicle one to two blocks ahead of him driving northbound. The vehicle's front driver's side window was darkly tinted, and the officer could not see who was driving the vehicle or how many occupants were inside.

The officer pursued the vehicle and located it on a different street a couple of blocks away. At this point, the vehicle was driving at a high rate of speed. The vehicle was in a residential area, which is controlled by a 25-mile-per-hour speed limit, and the

4.

officer estimated the vehicle was travelling more than 45 miles per hour. Based on this observation, the officer concluded the vehicle was speeding. The officer also opined that the vehicle's driving pattern suggested the driver was attempting to avoid contact with police.

The officer drove behind the vehicle and activated his overhead lights, and the vehicle pulled into a parking lot and parked. Appellant was the driver of the vehicle.

The officer testified the enforcement stop was based on appellant's manner of driving and illegally tinted windows. He explained he has received training in the difference between legal and illegal window tint and has stopped numerous vehicles for this violation. He testified that the tint on appellant's vehicle "was clearly obstructing [his] view into the vehicle which would have obstructed the driver's view as well." Based on the officer's training and experience, he concluded the window tint was a violation of the Vehicle Code. (See Veh. Code, § 26708, subd. (a).)

At the conclusion of the hearing, the trial court found the officer observed appellant driving "way above" the 25-mile-per-hour speed limit. The court also rejected defense counsel's argument that the officer's testimony was insufficient to justify the traffic stop, reasoning that "if you can't see in, that's the objective of that Vehicle Code [section]." However, the court ultimately denied the motion based on appellant's speeding, stating, "As to the evidence heard on the speeding issue, enough cause to pull [appellant] over so the motion would be denied at this time."

## B.  Standard of review.

"A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." (*Heien v. North Carolina* (2014) 574 U.S. 54, 60.)  "[T]o justify this type of seizure, officers need only 'reasonable suspicion'—that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law." (*Ibid.*)  In other words,

"a lawful traffic stop occurs when the facts and circumstances known to the police officer support at least a reasonable suspicion that the driver has violated the Vehicle Code or another law." (*People v. Nice* (2016) 247 Cal.App.4th 928, 937–938.)

At a motion to suppress evidence pursuant to section 1538.5, the People bear the burden of showing by a preponderance of the evidence that a warrantless search or seizure was reasonable under the Fourth Amendment. (*People v. James* (1977) 19 Cal.3d 99, 106, fn. 4; *People v. Williams* (1988) 45 Cal.3d 1268, 1300, abrogated on another ground by *People v. Diaz* (2015) 60 Cal.4th 1176, 1190.) " 'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.' " (*People v. Redd* (2010) 48 Cal.4th 691, 719.) "[W]e must accept the trial court's resolution of disputed facts and inferences, its evaluations of credibility, and the version of events most favorable to the People, to the extent the record supports them." (*People v. Zamudio* (2008) 43 Cal.4th 327, 342.) " 'In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Redd*, *supra*, 48 Cal.4th at p. 719.)

### C.  The officer had reasonable cause to stop appellant for speeding.

The officer testified he observed appellant driving over 45 miles per hour in a residential area, which is subject to a 25-mile-per-hour speed limit. (See Veh. Code, § 22352, subd. (b)(1).) This constituted either a violation of Vehicle Code section 22350 (basic speed law) or Vehicle Code section 22351, subdivision (b) (driving in excess of speed limit). "[I]t is beyond contravention that excessive speed, whether detected through mechanical device or observation, provides probable cause for a stop." (*People v. Sullivan* (1991) 234 Cal.App.3d 56, 65.) The trial court was justified in denying the motion to suppress on this basis.

Appellant argues the officer's testimony that appellant was speeding was not credible. He bases this claim on the officer's police report, which purportedly states the traffic stop was for illegal window tint and does not mention that appellant was speeding. Appellant also relies on body camera recordings that show officers tell appellant and his passenger the traffic stop was for illegal window tint. In addition, appellant notes the officer who conducted the stop was assigned to gang suppression, not traffic enforcement, and that no citation was issued for a violation of the Vehicle Code. According to appellant, this suggests the traffic stop was pretextual, and the officer fabricated his testimony that appellant was speeding.

The officer's police report and the body camera footage were not admitted into evidence at the suppression hearing, and the officer was not questioned about the contents of either. It is well settled that our review "is limited to the evidence before the court when it heard the motion." (*People v. Hartsch* (2010) 49 Cal.4th 472, 491; accord, *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 366; *People v. Garry* (2007) 156 Cal.App.4th 1100, 1105, fn. 2.) It would be improper for this court to consider such evidence in reviewing the trial court's denial of the suppression motion.

Appellant concedes the officer's police report is not in the record on appeal but argues it should be considered because it was described by both counsel. He notes the People's written opposition to appellant's suppression motion did not mention speeding and only stated that the traffic stop was based on illegally tinted windows. Additionally, after the close of evidence at the suppression hearing, defense counsel argued the police report did not mention appellant was speeding or attempting to evade law enforcement. Defense counsel also stated the prosecutor disclosed that the officer informed him the morning of the hearing that he observed appellant speeding before the stop. Later, during motions in limine, the trial court (a different judge than the judge who ruled on the suppression motion) asked the prosecutor to describe the basis for the traffic stop. The

prosecutor responded, "I believe it was window tint." Defense counsel added that the officer testified appellant was speeding but did not mention speeding in his police report.

"It is axiomatic that the unsworn statements of counsel are not evidence." (*In re Zeth S.* (2003) 31 Cal.4th 396, 413–414, fn. 11; accord, *People v. Kiney* (2007) 151 Cal.App.4th 807, 814–815.) For this reason, the statements of counsel describing the contents of the officer's police report are not evidence. On appeal, our role is to review the trial court's ruling that the traffic stop was reasonable under the Fourth Amendment by a preponderance of the *evidence*. It would be improper for this court to consider matters not in evidence in making this determination.[4]

Appellant also argues he should not be precluded from relying on the body camera footage because defense counsel had no reason to believe it would be relevant at the suppression hearing. Appellant provides no legal basis for this purported exception. Regardless, appellant's argument strains credulity. The body camera footage captures appellant's interaction with law enforcement immediately after the traffic stop, and depicts appellant's vehicle, including its windows. And even assuming defense counsel was unprepared to present the body camera footage in court, defense counsel could have requested a brief continuance, or could have cross-examined the officer about the contents of the body camera footage.

We also reject appellant's argument that the officer's decision not to cite appellant for a violation of the Vehicle Code suggests the stop was not based on such a violation. "A traffic stop is lawful at its inception if it is based on a reasonable suspicion that *any* traffic violation has occurred, even if it is ultimately determined that no violation did

---

[4] Although the contents of the police report were not in evidence, the record shows defense counsel told the trial court about the report during argument on the suppression motion, before the court issued its ruling. Despite defense counsel's representations, the court impliedly found credible the officer's testimony that appellant was speeding, and it denied the motion on this basis. This suggests that even if the police report had been admitted into evidence, it would not have impacted the court's ruling.

occur." (*Brierton v. Department of Motor Vehicles* (2005) 130 Cal.App.4th 499, 510.) Whether an officer ultimately does or does not issue a citation "is irrelevant for purposes of determining whether or not [the officer] had reasonable suspicion." (*Ibid.*) Here, moreover, after effectuating the traffic stop, officers discovered appellant was illegally in possession of multiple loaded firearms inside of his vehicle. It would be unreasonable to require officers to issue a Vehicle Code citation to justify any traffic stop, particularly where the stop reveals the driver of the vehicle had committed much more serious offenses.

As we explained above, in reviewing the denial of a motion to suppress, we defer to the trial court's express and implied factual findings and determinations of credibility if supported by substantial evidence. The trial court's denial of the motion based on the officer's testimony appellant was speeding was an implied finding that the officer's testimony was credible. Based on the evidence before the court at the time it issued its ruling, we find no basis to disturb that credibility finding. The officer's undisputed testimony established he observed appellant driving over 45 miles per hour in a residential district in violation of the Vehicle Code. Therefore, the trial court did not err in finding the traffic stop was reasonable under the Fourth Amendment.

Because we conclude the trial court's ruling was proper based on its finding the officer had reasonable cause to believe appellant was speeding, we need not determine whether the officer's testimony appellant had illegally tinted windows would also have justified the traffic stop.[5]

---

[5] After the trial court denied the suppression motion, the People dismissed the information and refiled the charges against appellant under a different superior court case number. Respondent argues appellant failed to preserve his appellate challenge to the denial of the suppression motion because he did not renew the motion after the case was refiled. Because we conclude the trial court did not err in denying the motion, we need not address this claim.

9.

**II.  The Record Does Not Support Appellant's Claim That the Trial Court's Excusal of an African-American Prospective Juror for Cause was Motivated By Explicit or Implicit Racial Bias.**

Appellant is African-American.  During jury selection, the People challenged Juror No. 1,[6] who is also African-American, for cause, alleging her answers during voir dire demonstrated actual bias.  The trial court granted the motion over appellant's objection.  Appellant contends that the trial court's excusal of Juror No. 1 was based on explicit or implicit racial bias, and therefore violated his constitutional right to a fair and representative jury.  He also argues the excusal violated Code of Civil Procedure section 231.7, and the CRJA.  We reject these claims because the record does not show the trial court's excusal of Juror No. 1 was racially motivated.

**A.  Background.**

**1.  Voir Dire—Juror No. 1.**

In her written juror questionnaire, in response to a question about her overall view of the criminal justice system, Juror No. 1 marked, "Somewhat Negative."  Below, she wrote:  "Persons of color fill the jails!"  She noted she had a bad experience with law enforcement where the police entered a yard and ordered her and her friends to lie on the ground.  She also wrote that she previously served as a juror on a criminal trial, and described the experience as "negative," stating she "[d]idn't like [that] someone's future was in my hands."

During jury selection, the trial court questioned certain prospective jurors individually based on their responses to the juror questionnaire.  When the court questioned Juror No. 1, the following exchange occurred:

> "THE COURT:  [Juror No. 1], you've indicated that you have a somewhat negative overall opinion of the criminal justice system and then you put in

---

[6]  For purposes of anonymity, we identify the prospective jurors referenced in this opinion as "Juror No. 1" and "Juror No. 2."

10.

there that the, quote, "persons of color fill the jails!" end quote. Can you elaborate a little bit about what your feelings are on that topic?

"[JUROR No. 1]: Well, I feel that most individuals of color get poor counsel, therefore, they're bound to go to jail.

"THE COURT: We are currently in trial right now in a criminal case and I'll introduce the parties more formally later on. For now I'll tell you we have a prosecution and defense. There are several allegations here, felony allegations. The most [serious] of the allegations involve a count or two counts actually that the defendant illegally possessed a firearm. So he was a convicted felon who was not supposed to possess firearms but the allegation is that he was found in possession of that. The other allegations are two counts that the defendant illegally possessed narcotics, illegal drugs. And the record will reflect that the defendant in the case is African American. He is a person of color as you mentioned. Do you think your feelings on the criminal justice system as a whole and on the particular topic about how persons of color may be mistreated in the system—

"[JUROR No. 1]: Oh, yes.

"THE COURT: … I'm not getting into whether or not that opinion is valid or not. There certainly seems to be a lot of facts for it. The real question is whether or not your feelings on that topic would interfere with your ability to be fair and neutral to both sides in this case?

"[JUROR No. 1]: I probably would be more sympathetic.

"THE COURT: As you sit here right now, do you sort of find yourself favoring one side or the other?

"[JUROR No. 1]: No.

"THE COURT: Even though you haven't heard any evidence?

"[JUROR No. 1]: No.

"[¶] … [¶]

"THE COURT: Let me switch to a little bit of a different topic. You said you have served as a juror on one occasion. Is that correct?

"[JUROR No. 1]: Yes.

11.

"THE COURT: And that was a criminal case?

"[JUROR No. 1]: It was. I don't recall what it was.

"THE COURT: And you put in there that you felt that was a negative experience?

"[JUROR No. 1]: It was.

"THE COURT: And then you commented that you, quote, 'didn't like someone's future basically to be in your hands,' end quote. Is that correct?

"[JUROR No. 1]: Yes.

"THE COURT: Would you be comfortable serving as a juror again given the fact you had a negative experience?

"[JUROR No. 1]: I don't like that. I really don't. Because I don't know if I've done the right thing.

"THE COURT: Let's say hypothetically you remain as a juror in this case. Would you be willing to listen closely to all the evidence?

"[JUROR No. 1]: Yes.

"THE COURT: Would you be willing to listen closely to the law?

"[JUROR No. 1]: Yes.

"THE COURT: Would you be willing to follow the law even if you disagree with it?

"[JUROR No. 1]: Yes.

"THE COURT: And I'll get into the standards of proof and the presumption of innocence, all these types of legal concepts a little bit down the road. But if you're to remain as a juror in this case and you did feel that the prosecutor proved the defendant's guilt to the legal standard, which everybody probably knows is beyond a reasonable doubt, and that when you looked at the facts and the law you were convinced beyond a reasonable doubt, would you have any reluctance to vote guilty for any reason at all including the fact that the defendant is a person of color?

"[JUROR No. 1]: No, but I still wouldn't like it.

12.

"THE COURT: Okay. Yeah, I don't think anybody feels good about necessarily events that lead people to come to court but that's a different issue. In fact, you'd be specifically instructed to base a decision just on the facts and the law and not let an over sense of emotion, sympathy, bias, prejudices, any of that actually is not supposed to come into—

"[JUROR No. 1]: That's really difficult. It truly is.

"THE COURT: Well you tell me, ma'am. I don't want to keep asking you questions. Do you feel that you can be fair and neutral to both sides in this case or is that going to be too much to ask?

"[JUROR No. 1]: I think it's too much. I really do."

The court suggested the parties stipulate to excuse Juror No. 1. The prosecutor agreed, but defense counsel made a request to examine Juror No. 1, which the court granted. Defense counsel explained to Juror No. 1 that while she may disagree with certain laws or believe they are applied in an unfair or discriminatory manner, as a juror she would have to follow the law regardless of "sympathy or other feelings." The following exchange then occurred:

"[DEFENSE COUNSEL]: … Based on that do you think that you could follow the law as instructed or like [the court] mentioned or is that too much to ask?

"[JUROR No. 1]: I could but it is once again difficult. Really difficult.

"[DEFENSE COUNSEL:] And I don't mean to pick on you, ma'am, but when you say difficulty I just wanted to follow up again. Is it something that you just don't think you can do at this time given potentially strong feelings about, you know, discrimination in the criminal justice system or not?

"[JUROR No. 1]: Discrimination period not just within the justice system.

"[¶] … [¶]

"[DEFENSE COUNSEL]: And again understanding the allegations in this case involve an allegation of illegal gun possession and illegal drug possession and obviously Mr. Leiva is an African American male. I can't get too much more into the facts but if hypothetically if you've heard all the

13.

evidence in this case and you were convinced that those charges were proven beyond a reasonable doubt, would you be comfortable voting guilty or do you think that you couldn't do that or you would be having sympathy influence your opinion?

"[JUROR No. 1]: Of course I would have sympathy but I mean the law is the law too.

"[DEFENSE COUNSEL]: So do you think you can follow the law then or is it going to be difficult in a case like this?

"[JUROR No. 1]: Once again I can follow but it is difficult. It truly is."

The prosecutor moved to excuse Juror No. 1 for cause, contending her answers made clear her beliefs would prevent her from being fair and impartial. Defense counsel objected, arguing Juror No. 1 stated she believed she could follow the law even though it would be difficult, and that her beliefs about the justice system do not necessarily warrant excusal for cause. Defense counsel also stated that recently enacted Code of Civil Procedure section 231.7 indicates the Legislature supports the view that persons should not be categorically excluded from juries for expressing negative views of law enforcement or the criminal justice system.

The trial court overruled the defense objection and excused Juror No. 1 for cause, stating:

"I think the record is clear. I am going to go ahead and grant the People's challenge for cause. And I struggle with this a little bit because I am sensitive to these types of topics in general and of course with [Code of Civil Procedure section 231.7] but the reality is I have no problem with people having an issue with the criminal justice system as a whole and the idea that there might be some racism even some institutional racism, so that's not really the problem. I think like you said, [defense counsel], statistical percentages and studies, a lot of that shows that those types of views may arguably have good justifications in some issues, some context. However, the reason I'm granting the motion though is because—not because of her views but because she basically said—she did say because of those views she would have a very difficult time being fair in this case. I'm not quoting her of course but that was the gist of what I heard. She would really struggle I think was her answer and she clearly has a great

14.

deal of sympathy for the defendant just by virtue of his skin color. And so basically if you look at the record all of her answers including her prior service, she found it to be very negative and did not like the idea of having that responsibility. I think she indicated it would be extremely difficult for her to not have those views about the criminal justice system impact her in this case and she essentially said as much, so for that reason I'm going to grant the motion."

### 2. Voir Dire—Juror No. 2

Later in jury selection, the trial court brought Juror No. 2 into the courtroom for questioning. Juror No. 2 is Hispanic and Asian. In her questionnaire, she wrote she has a "Very Negative" overall view of the criminal justice system, explaining that her nephew was shot and killed a few years ago and his killer was found not guilty. She also stated her prior jury experience was negative because the "jurors were harassed by family members of defendant."

During questioning, the trial court asked Juror No. 2 if her nephew's case might interfere with her ability to be fair and impartial, and Juror No. 2 answered, "Honestly I don't know." However, in response to follow-up questions by the court, Juror No. 2 affirmed that she could base her decision as a juror on the facts and law presented, keep her nephew's case separate and not let it impact her decision, and be fair and impartial to both sides. Juror No. 2 also stated she is "totally against drugs" because her husband was an addict, but believed she could follow the law and give appellant "a fair trial." With respect to her prior jury experience, Juror No. 2 stated it would "concern" her, but she believed she could put that experience aside and decide the case on the evidence.

Later, defense counsel asked Juror No 2 if she thought she would be better suited to serve as a juror on a different type of case that does not involve allegations of firearm possession and drug possession. Juror No. 2 replied, "Yes."

Defense counsel challenged Juror No. 2 for cause, noting that she became emotional while talking about her nephew and took long pauses answering questions. The prosecutor responded that Juror No. 2 did not say anything that should give the court

15.

doubt that she could be fair and impartial, and while she was emotional about her nephew, the instant case does not involve allegations of violence.

The trial court denied appellant's challenge for cause to Juror No. 2, stating:

> "I certainly understand the reason for the motion, [defense counsel], but I will deny that along the same lines of what you've both just observed. [Juror No. 2] really never said anything that indicated she couldn't be anything other than fair and impartial and neutral to both sides. When it comes to the question about do you think it would be better to serve on a different type of case, I think it has some merit but it's not entirely persuasive for me. Jurors don't get to pick what type of case they serve on. There's some that may be a little bit better that may be true but it doesn't mean that they're not qualified to sit on this particular case. There's a difference there. And although it may be a little bit easier for her or ideal for her to sit on a different case, again, that doesn't disqualify her from this case. It doesn't make her automatically inappropriate for this case. So based on her answers I will deny that request." [7]

### B.      Standard of review.

A prospective juror may be excused for cause on the basis of "[a]ctual bias—the existence of a state of mind on the part of the juror in reference to the case, or to any of the parties, which will prevent the juror from acting with entire impartiality, and without prejudice to the substantial rights of any party." (Code Civ. Proc., § 225, subd. (b)(1)(C).) In other words, "a juror may be constitutionally excused for cause if the juror's views would ' " ' " ' "prevent or substantially impair" ' the performance of the juror's duties as defined by the court's instructions and the juror's oath." ' " ' " (*People v. Henderson* (2022) 78 Cal.App.5th 530, 546 (*Henderson*).) These duties include the duty to set aside "bias, sympathy, prejudice, or public opinion" and decide the case based solely on the evidence and the court's instructions. (CALCRIM No. 200; see *Henderson*, *supra*, 78 Cal.App.5th at p. 546.)

---

[7]      Appellant later exercised a peremptory challenge to excuse Juror No. 2.

16.

"Assessing the qualifications of jurors challenged for cause is a matter falling within the broad discretion of the trial court." (*People v. Weaver* (2001) 26 Cal.4th 876, 910.) "In according deference on appeal to trial court rulings on motions to exclude for cause, appellate courts recognize that a trial judge who observes and speaks with a prospective juror and hears that person's responses (noting, among other things, the person's tone of voice, apparent level of confidence, and demeanor), gleans valuable information that simply does not appear on the record." (*People v. Stewart* (2004) 33 Cal.4th 425, 451.) Where "a juror gives conflicting testimony as to her capacity for impartiality, the determination of the trial court on substantial evidence is binding on the appellate court." (*People v. Kaurish* (1990) 52 Cal.3d 648, 675; accord, *People v. Clark* (2011) 52 Cal.4th 856, 895.) We therefore review the excusal of a juror for cause for abuse of discretion. (*People v. Armstrong* (2019) 6 Cal.5th 735, 751; accord, *People v. Scott* (2015) 61 Cal.4th 363, 378; *People v. Jones* (2012) 54 Cal.4th 1, 41.) An abuse of discretion will only be found in limited circumstances, such as where a trial court is unaware of its discretion, considers impermissible factors in the exercise of that discretion, or renders a decision "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377–378.)

Appellant claims the abuse of discretion standard is inapplicable here because the excusal of Juror No. 1 implicated his constitutional rights. Appellant does not suggest an alternative standard of review but asserts that such claims are entitled to "[g]reater appellate scrutiny." He relies on cases addressing the related issue of whether the excusal of prospective jurors based on their views on the death penalty affected the defendant's constitutional right to a fair and impartial jury. (See *People v. Clark*, *supra*, 52 Cal.4th at pp. 894–895; *People v. Stewart*, *supra*, 33 Cal.4th 425, 445–446.) However, even in this circumstance, the reviewing court still applies the abuse of discretion standard, according deference to the trial judge " 'who sees and hears the juror' " and upholds the trial court's ruling if supported by the record. (*People v. Souza* (2012) 54 Cal.4th 90, 122; accord,

17.

*People v. Armstrong*, *supra*, 6 Cal.5th at p. 751; *People v. Clark*, *supra*, 52 Cal.4th at p. 895.)

Appellant appears to conflate the standard of review with the separate question of whether the error was prejudicial. The authority cited by appellant makes clear that the erroneous excusal of a single prospective juror that affects a defendant's right to a fair and impartial jury necessarily requires reversal. (*People v. Clark*, *supra*, 52 Cal.4th at p. 895; *People v. Stewart*, *supra*, 33 Cal.4th at pp. 454–455.) But in determining whether such error occurred, the trial court's ruling is entitled to appropriate deference. (*People v. Clark*, *supra*, 52 Cal.4th at p. 895; *People v. Stewart*, *supra*, 33 Cal.4th at pp. 450–451.) We review appellant's claim that the excusal of Juror No. 1 violated his constitutional rights under the same standard. (See *Henderson*, *supra*, 78 Cal.App.5th at pp. 551–553 [defendant's claim that the trial court's for cause excusal unconstitutionally excluded African-Americans from jury reviewed for abuse of discretion].)

C.      **The record does not show the trial court excused Juror No. 1 for an improper reason. No constitutional violation or abuse of discretion occurred.**

Appellant claims the for cause excusal of Juror No. 1 was based on explicit or implicit racial bias, in violation of his state and federal constitutional rights to a representative and impartial jury. We are not persuaded. The trial court reasonably concluded based on Juror No. 1's answers that she could not be fair and impartial because of her bias and sympathy in favor of appellant.

"The 'Constitution forbids striking even a single prospective juror for a discriminatory purpose.' " (*Foster v. Chatman* (2016) 578 U.S. 488, 499.) Appellant argues that in excluding Juror No. 1 based on her views on the criminal justice system, the trial court employed criteria that served to exclude African-Americans from the jury. According to appellant, this violated his state and federal constitutional rights to an impartial jury selected from a fair cross-section of the community. (Cal. Const., art. I,

§ 16; U.S. Const., 6th & 14th Amends.)  He relies on *Henderson*, which held that a trial court may not excuse for cause African-American prospective jurors solely because of their belief that "the criminal justice system treats African-Americans unfairly." (*Henderson*, *supra*, 78 Cal.App.5th at p. 538.)

In *Henderson*, the trial court excused two African-American prospective jurors for cause.  (*Henderson*, *supra*, 78 Cal.App.5th at pp. 542–545.)  On appeal, the defendant argued the trial court violated his right to a representative and impartial jury by excusing those prospective jurors based on their views that the criminal justice system treats African-Americans too harshly.  (*Id.* at p. 548.)  The defendant claimed that many African-Americans hold this view, and excusing jurors for cause on this basis necessarily results in the exclusion of the majority of African-American prospective jurors.  (*Ibid.*)

*Henderson* does not assist appellant.  *Henderson* agreed that " '[s]*tanding alone*, the belief that the criminal-justice system is systemically unfair to blacks is not a basis to disqualify a juror.' "  (*Henderson*, *supra*, 78 Cal.App.5th at p. 549.)  However, *Henderson* also reasoned that where a trial court finds, on an adequate record, that "a potential juror who believes that the criminal-justice system is unfair to blacks might respond to that belief by having difficulty being impartial," excusal for cause is appropriate.  (*Ibid.*)  Based on its review of the record, *Henderson* found "that is what happened here."  (*Ibid.*)  Both excused jurors expressed concerns about the criminal justice system and either stated or suggested they would be influenced by the fact that the defendant reminded them of a family member.  (*Id.* at pp. 550–551.)  One of the excused jurors also stated she was uncomfortable serving as a juror and determining the question of guilt.  (*Id.* at p. 550.)  *Henderson* concluded the trial court did not abuse its discretion because the record supported its finding that the prospective jurors were "substantially impaired by their bias and sympathy."  (*Id.* at pp. 552–553.)

Here, as in *Henderson*, the trial court excused Juror No. 1 for cause not because of her views on the criminal justice system, but because those views would impair her

ability to fulfill her duties as a juror. When the trial court asked Juror No. 1 if her views on the criminal justice system would interfere with her ability to be fair and impartial to both sides, she responded she "probably would be more sympathetic" to appellant. She stated it would be "really difficult" not to let sympathy or bias influence her decision, and ultimately told the court she thought it would be "too much" to be fair and neutral to both sides. While appellant notes that at one point Juror No. 1 stated she would be willing to follow the law even if she disagreed with it, during follow-up questioning by defense counsel, she admitted it would be "truly" difficult to do so. Juror No. 1 also stated she was uncomfortable serving as a juror and having "someone's future … in [her] hands." Based on Juror No. 1's answers, the trial court reasonably concluded that her bias and sympathy would prevent her from being a fair and impartial juror. And because this finding of actual bias was reasonable and supported by the record, there is no basis to conclude the for cause excusal of Juror No. 1 was motivated by racial bias.

In an effort to demonstrate the excusal of Juror No. 1 was racially motivated, appellant relies on comparative juror analysis between Juror No. 1 and Juror No. 2. Appellant does not provide legal authority that comparative juror analysis is applicable to challenges for cause. In the context of assessing whether a peremptory challenge was made for a discriminatory purpose under the *Wheeler/Batson*[8] framework, our high court has reasoned that "[t]he rationale for comparative juror analysis is that a side-by-side comparison of a prospective juror struck by the prosecutor with a prospective juror accepted by the prosecutor may provide relevant circumstantial evidence of purposeful discrimination." (*People v. DeHoyos* (2013) 57 Cal.4th 79, 109.) "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination." (*Miller-El v. Dretke* (2005) 545 U.S. 231, 241.)

---

[8] *People v. Wheeler* (1978) 22 Cal.3d 258; *Batson v. Kentucky* (1986) 476 U.S. 79.

20.

Appellant argues this rationale also applies to challenges for cause. In this vein, he claims Juror No. 1 and Juror No. 2 gave similar answers during voir dire: both had negative opinions of the criminal justice system, expressed that they might be unable to be fair and impartial in this case, and had reservations about serving on a jury. In appellant's view, the fact that the trial court excused Juror No. 1, who is African-American, but did not excuse Juror No. 2, who is not African-American, suggests the court's rulings were racially motivated.

To the extent comparative juror analysis is applicable here, appellant's assertion that Juror No. 1 and Juror No. 2 were similarly situated is not supported by the record. During voir dire, Juror No. 2 expressed concerns that her negative view of the criminal justice system, her prior jury experience, and strong opinions about drugs might impact her ability to be fair and impartial. But after follow-up questions by the trial court about each concern, Juror No. 2 affirmed that she could set those views and experiences aside and decide the case based on the law and the evidence presented at trial. In contrast, Juror No. 1 repeatedly maintained it would be "really difficult" for her to put aside bias and sympathy, ultimately stating she thought it would be "too much" to be fair and neutral to both sides. Given this disparity, the trial court had ample basis to excuse Juror No. 1 but not Juror No. 2. For this reason, appellant's comparative juror analysis does not suggest the trial court acted with racial bias.

Finally, appellant relies on the fact that Juror No. 1 was the only African-American prospective juror personally questioned during voir dire. The jury venire included two other prospective jurors who identified as African-American in their questionnaires. But the jury was selected and sworn before these two prospective jurors were called into court for questioning or subject to challenges for cause or peremptory challenges. Thus, appellant argues Juror No. 1's excusal was racially motivated because it resulted in there being no African-American jurors.

In the *Wheeler/Batson* context, our high court has explained that while "excusal of all members of a particular group may give rise to an inference of impropriety, especially if the defendant belongs to the same group, that inference, as we have observed, is not dispositive." (*People v. Crittenden* (1994) 9 Cal.4th 83, 119.) Moreover, the inference is of "less weight" where "only a single member of that group" was excused. (*Ibid.*) Here, Juror No. 1 was the only African-American prospective juror the trial court excused for cause, and nothing in the record suggests the trial court acted with racial bias. Accordingly, the fact that Juror No. 1 was the only African-American prospective juror questioned during voir dire does not affect our conclusion.

There is "no constitutional violation where a court determines a prospective juror cannot be impartial, for whatever reason." (*Henderson*, *supra*, 78 Cal.App.5th at p. 548.) The record amply supports the trial court's conclusion that Juror No. 1 exhibited actual bias and could not be fair and impartial. Accordingly, appellant fails to show the trial court acted with racial bias or otherwise abused its discretion in excusing Juror No. 1 for cause, and this claim is without merit.

**D.  Code of Civil Procedure section 231.7 does not apply to challenges for cause.**

Appellant also argues the for cause excusal of Juror No. 1 was improper based on recently enacted Code of Civil Procedure section 231.7. Effective in criminal trials beginning January 1, 2022 (Code Civ. Proc., § 231.7, subd. (i)), this section "create[ed] new procedures for identifying unlawful discrimination in the use of *peremptory challenges*." (*People v. Jaime* (2023) 91 Cal.App.5th 941, 943, italics added.) As pertinent here, Code of Civil Procedure section 231.7 provides that a peremptory challenge of a prospective juror based on certain enumerated reasons "is presumed to be invalid" unless the party exercising the challenge shows by clear and convincing evidence that the proffered reason for the challenge is unrelated to the prospective juror's race, ethnicity, gender, or other protected characteristic. (Code Civ. Proc., § 231.7,

subd. (e).)  The list of presumptively invalid reasons for exercising a peremptory challenge includes:  "Expressing a distrust of or having a negative experience with law enforcement or the criminal legal system"; "Expressing a belief that law enforcement officers engage in racial profiling or that criminal laws have been enforced in a discriminatory manner"; and "Having a close relationship with people who have been stopped, arrested, or convicted of a crime."  (Code Civ. Proc., § 231.7, subd. (e)(1)-(3).)

Appellant acknowledges that Code of Civil Procedure section 231.7 does not expressly apply to challenges for cause.  Nonetheless, he argues the legislative history behind its enactment and legislative findings reveal a clear policy that the excusal of a prospective juror for cause based on a presumptively invalid reason under this section "should not be tolerated in jury selection."  He notes, for example, that in enacting Code of Civil Procedure section 231.7, the Legislature found that "many of the reasons routinely advanced to justify the exclusion of jurors from protected groups are in fact associated with stereotypes about those groups or otherwise based on unlawful discrimination," and that the statute "designates several justifications as presumptively invalid and provides a remedy for both conscious and unconscious bias in the use of peremptory challenges."  (Stats. 2020, ch. 318, § 1, subd. (b).)  According to appellant, it would be nonsensical to permit excusal for cause for reasons that are presumptively invalid under this section.

In *People v. Aranda* the court rejected the same argument appellant makes here, finding that "[o]n its face, [Code of Civil Procedure] section 231.7 applies only to peremptory challenges, not challenges for cause."  (*People v. Aranda* (2023) 95 Cal.App.5th 311, 314 (*Aranda*).)  *Aranda* observed the term "peremptory challenge" is used 25 times throughout Code of Civil Procedure section 231.7.  (*Aranda*, *supra*, at p. 314.)  Conversely, Code of Civil Procedure section 231.7 only mentions challenges for cause in subdivision (*l*), which states:  " 'It is the intent of the Legislature that enactment of this section shall not, in purpose or effect, lower the standard for judging challenges

for cause or expand use of challenges for cause.' " (*Aranda*, at p. 314.)  Rejecting the defendant's argument that limiting Code of Civil Procedure section 231.7 to peremptory challenges would be contrary to legislative intent, *Aranda* reasoned that under well-established rules of statutory interpretation, the plain meaning of the statute controls, because it is the most reliable indication of legislative intent.  (See *Aranda*, at pp. 314–315.)  *Aranda* concluded that "[t]he language of [the statute] is clear:  it applies only to peremptory challenges."  (*Id.* at p. 315.)  Extending Code of Civil Procedure section 231.7 to challenges for cause would conflict with its plain language.  (*Aranda*, at p. 315.)

We agree with *Aranda* that Code of Civil Procedure section 231.7 only applies to peremptory challenges.  If the Legislature intended that the statute apply to challenges for cause, "it would have said so directly, as it easily could have done."  (*Ramirez v. City of Gardena* (2018) 5 Cal.5th 995, 1001.)  "[W]e presume the Legislature intended everything in a statutory scheme, and we should not read statutes to omit expressed language or include omitted language."  (*Jurcoane v. Superior Court* (2001) 93 Cal.App.4th 886, 894.)  Adopting appellant's position, which would broaden Code of Civil Procedure section 231.7 beyond its express terms, would be contrary to this canon of statutory interpretation.

We also reject appellant's argument that our reading of Code of Civil Procedure section 231.7 would lead to absurd results.  (See *People v. Mendoza* (2000) 23 Cal.4th 896, 908 [reviewing court presumes Legislature did not intend statutory construction that produces absurd consequences].)  The statute was enacted to prevent parties from using peremptory challenges to unfairly exclude prospective jurors based on membership in a protected group.  (Stats. 2020, ch. 318, § 1, subd. (a).)  But unlike a peremptory challenge, which generally can be made without providing a reason (Code Civ. Proc., § 226, subd. (b)), excusal for cause based on actual bias requires a judicial finding that a prospective juror cannot fully perform the duties of a juror.  (Code Civ. Proc., § 225, subd. (b)(1)(C).)  Excusal for cause must be based on the appropriate legal standard,

supported by the record, and is subject to appellate review. (*People v. Armstrong*, *supra*, 6 Cal.5th at p. 751; *People v. Clark*, *supra*, 52 Cal.4th at p. 895.)  In excluding challenges for cause from Code of Civil Procedure section 231.7, the Legislature did not create a loophole that would allow excusal of prospective jurors for inappropriate reasons.

In any event, even assuming Code of Civil Procedure section 231.7 applies to challenges for cause, its provisions were not violated by the excusal of Juror No. 1.  In issuing its ruling, the trial court stated it was familiar with the section and explained that excusal is not warranted simply because a juror believes the criminal justice system suffers from institutional racism.  The court specified it was not excusing Juror No. 1 "because of her views," but because Juror No. 1 "did say because of those views she would have a very difficult time being fair in this case," and that "she clearly has a great deal of sympathy for [appellant] just by virtue of his skin color."  As we explained above, the trial court's reasoning was supported by the record.  Moreover, the court reasoned Juror No. 1 stated she was uncomfortable with the responsibility of determining guilt. Accordingly, appellant's assertion that the trial court excused Juror No. 1 solely because of her views on the criminal justice system is unfounded.  To the extent Code of Civil Procedure section 231.7 reflects a Legislative policy against excusing jurors for cause based on their views of the criminal justice system, it is not implicated here.

E.     **Appellant's claim the for cause excusal of Juror No. 1 violated the CRJA is forfeited.  In any event, the claim lacks merit.**

In addition to the above claims regarding the for cause excusal of Juror No. 1, appellant argues the trial court and prosecutor violated the CRJA by exhibiting bias or animus toward appellant because of his race.  We conclude this claim is forfeited because appellant did not raise it below.  The claim also lacks merit, because nothing in the record suggests the trial court acted with racial bias or animus.

### 1.  Legal background—the CRJA.

Effective January 1, 2021, the CRJA (Stats. 2020, ch. 317, § 3.5) added section 745 to the Penal Code, which states, "The state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin."  (§ 745, subd. (a).)  As pertinent here, a violation of the CRJA occurs if "[t]he judge [or] an attorney in the case" exhibits racial "bias or animus towards the defendant," (§ 745, subd. (a)(1)), or uses "racially discriminatory language about the defendant's race, ethnicity, or national origin."  (§ 745, subd. (a)(2).)  The CRJA does not define the terms "bias" or "animus," but specifies that the moving party is not required to prove "intentional discrimination."  (§ 745, subd. (c)(2).)  However, the legislative findings to the CRJA include a non-exhaustive list of potentially violative statements or conduct, including "racially incendiary or racially coded language, images, and racial stereotypes," and suggests that people of a certain race are "predisposed" to criminal conduct. (Stats. 2020, ch. 317, § 2, subds. (d), (e).)  The moving party has the burden of proving a violation of the CRJA by a preponderance of the evidence.  (§ 745, subd. (c)(2).)

### 2.  The claim is forfeited.

A CRJA claim may be raised on direct appeal from conviction or sentence if the claim is based on the trial record.  (§ 745, subd. (b).)  However, such claims are still subject to appellate rules of forfeiture.  (*People v. Lashon* (2024) 98 Cal.App.5th 804, 810–811 (*Lashon*).)  In *Lashon,* the court observed the Legislature "did not include any language indicating a section 745 claim could be presented on direct appeal *for the first time.*"  (*Lashon*, *supra*, 98 Cal.App.5th at p. 812.)  *Lashon* also noted the Legislature included a waiver provision, providing that a CRJA motion may be deemed waived if not "made as soon as practicable upon the defendant learning of the alleged violation." (§ 745, subd. (c); *Lashon*, at p. 813.)  Based on this statutory language, and its examination of section 745's legislative history, *Lashon* concluded that a CRJA claim on

direct appeal "is subject to the general appellate rules of preservation and forfeiture of claims that could have been but were not made in the trial court." (*Lashon*, at pp. 812–815.)  "It makes little sense for the Legislature to prescribe a comprehensive procedure for making and adjudicating a section 745 motion at the trial level (including a specific waiver provision for untimely motions), only to allow defendants who could have but did not use that procedure (thereby preserving their claim for review) to bypass that procedure and pursue a section 745 claim for the first time on direct appeal." (*Lashon*, *supra*, 98 Cal.App.5th at p. 813.)

Following *Lashon*, a different panel of this court agreed that a CRJA claim is forfeited where a defendant could have but failed to raise the claim below.  (*People v. Singh* (2024) 103 Cal.App.5th 76, 114–115 (*Singh*).)  Adopting *Lashon*'s reasoning, *Singh* observed that "[t]he Legislature could have, but did not, expressly declare that a defendant in such instances could raise such a claim on appeal *for the first time*." (*Singh*, *supra*, at p. 114.)  *Singh* also explained that obviating traditional forfeiture rules "would render the timeliness requirement set forth in section 745, subdivision (c) meaningless because, even if such a claim was not timely raised below, it could be raised for the first time on appeal." (*Singh*, at p. 115.)  Conversely, applying the forfeiture rule "harmonizes the statutory provisions (namely, § 745, subds. (b) and (c)) and gives each provision full effect." (*Ibid*.)

Appellant argues *Lashon* was wrongly decided.  He contends the plain language of section 745, subdivision (b) authorizes a defendant to raise a CRJA claim for the first time on direct appeal, and that to conclude otherwise would render this language superfluous.  We disagree.  As originally enacted, the CRJA only expressly authorized a claim to be raised in the trial court, in habeas proceedings, or in a postjudgment motion pursuant to section 1473.7.  (§ 745, former subd. (b) (Stats. 2020, ch. 317, § 3).)  The Legislature subsequently enacted Assembly Bill No. 1118 (2023-2024 Reg. Sess.) (Stats. 2023, ch. 464, § 1), amending section 745, subdivision (b) to allow an appellant to raise a

claim alleging a violation of the CRJA "based on the trial record … on direct appeal from the conviction or sentence." (§ 745, subd. (b).) Assembly Bill No. 1118's legislative history reveals this language was added to clarify that "a CRJA claim based on the trial record may be raised on direct appeal from the conviction or sentence, not just in a habeas petition." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1118 (2023–2024 Reg. Sess.) as amended Mar. 15, 2023, p. 5.) As amended, the plain language of section 745, subdivision (b), accomplishes this purpose by clarifying that CRJA claims may be raised on direct appeal. But the application of forfeiture rules to such claims does not render this amended language meaningless—CRJA claims may be raised on direct appeal but may not be raised *for the first time* on direct appeal.

Next, appellant contends the application of forfeiture rules would be contrary to the Legislature's intent to "streamline" the CRJA procedure by allowing claims to be resolved on direct appeal. He relies on a statement by Assembly Bill No. 1118's author that CRJA claims "would be more efficiently decided through the appeals process as opposed to the habeas route, which requires more litigation and judicial resources." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1118 (2023–2024 Reg. Sess.) June 6, 2023, p. 5.) However, nothing in the legislative history cited by appellant suggests the Legislature intended to accomplish this goal by doing away with forfeiture rules. We also fail to see how appellant's interpretation of the CRJA would conserve judicial resources. Permitting a CRJA claim "to be raised on direct appeal for the first time when it could have been timely raised and remedied below would be directly contrary to the goal of promoting judicial efficiency." (*People v. Singh*, *supra*, 103 Cal.App.5th at p. 115.) Instead of allowing trial courts to "swiftly and effectively address racial bias as soon as practical upon a defendant learning of an alleged violation," appellant's interpretation would encourage "improper 'sandbagging' " and require appellate courts to review CRJA claims that have not been fully litigated below. (*Lashon*, *supra*, 98 Cal.App.5th at p. 815.)

Finally, appellant claims application of forfeiture rules would conflict with the CRJA's disqualification provision, which states that if the motion is based "on conduct or statements by the judge, the judge shall disqualify themselves from any further proceedings under this section." (§ 745, subd. (b).) This provision merely provides that such claims must be decided by a different trial judge, similar to the procedure employed for challenges against a judge for cause under Code of Civil Procedure section 170.1. (See Code Civ. Proc., § 170.3.) Requiring CRJA claims based on the trial judge's conduct be raised in the trial court does not conflict with this provision.

In sum, we agree with *Lashon* and *Singh* that CRJA claims are subject to appellate rules of forfeiture. In the instant case, appellant objected to the People's request to excuse Juror No. 1 for cause but did not contend that the court or prosecutor violated the CRJA.[9] Appellant therefore forfeited his CRJA claim by failing to raise a "timely and specific objection on the ground he now raises." (*People v. Pearson* (2013) 56 Cal.4th 393, 416; *People v. Elliott* (2012) 53 Cal.4th 535, 572.)

### 3. Appellant fails to establish the trial court and prosecutor violated the CRJA.

Even assuming appellant's CRJA claim is not forfeited, we conclude it fails on the merits. As detailed above, nothing in the record suggests the trial court's for cause

---

[9] Appellant notes defense counsel argued in his sentencing memorandum that application of the armed with a deadly weapon finding (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii)) would violate the CRJA because it would result in discriminatory racial impact under section 745, subdivision (a)(4). In support, defense counsel stated, "[I]t is worth noting that [appellant] was convicted by a jury that contained not a single African American peer," and that Juror No. 1 was excused for cause after she "expressed concerns about her ability to be fair" because of her views of the criminal justice system. We read this invocation of the CRJA as a sentencing argument, not a challenge to the for cause excusal of Juror No. 1. To the extent defense counsel was seeking to make such a challenge, it was not a timely objection "made as soon as practicable upon [appellant] learning of the alleged violation." (§ 745, subd. (c); see *Lashon*, *supra*, 98 Cal.App.5th at pp. 812–813.)

excusal of Juror No. 1 was motivated by racial bias. Appellant contends the trial court's discriminatory purpose is evidenced by the fact that Juror No. 1 was the only African-American prospective juror questioned during voir dire, and he repeats the comparative juror analysis arguments with respect to Juror No. 2. But as we have explained, the trial court had ample basis to excuse Juror No. 1 but deny appellant's cause challenge to Juror No. 2, and the excusal of a single prospective juror, without more, does little to establish racial bias. Appellant also asserts that the trial court excused Juror No. 1 because of her negative views of the criminal justice system and argues excusal on this basis demonstrates racial bias because it is a presumptively invalid reason under Code of Civil Procedure section 231.7. However, the record is clear that the trial court excused Juror No. 1 based on a finding of actual bias, not because of her views on the criminal justice system.

In addition, there is no basis to conclude that the prosecutor acted with racial bias or animus by requesting to excuse Juror No. 1 for cause. The prosecutor argued that Juror No. 1's answers during voir dire demonstrated she could not be a fair and impartial juror because of her bias in favor of appellant and against the People. This argument comported with the standard for actual bias—that Juror No. 1's "state of mind" would prevent her "from acting with entire impartiality." (Code Civ. Proc., § 225, subd. (b)(1)(C).) Given the clear legal relevance of the prosecutor's argument, his request to excuse Juror No. 1 did not exhibit racial bias or animus.

To conclude, appellant fails to meet the burden of establishing the trial record demonstrates racial bias or animus by the trial court or prosecutor, even under the applicable preponderance of the evidence standard. The prosecutor's challenge for cause and the trial court's ruling were based on well-established law that a juror may be excused for actual bias. Nothing in the record suggests either the trial court or prosecutor were expressly or implicitly motivated by bias or animus against appellant because of his

race.  We therefore reject appellant's assertion that the trial court and prosecutor violated the CRJA.

## **<u>DISPOSITION</u>**

The judgment is affirmed.


LEVY, J.

WE CONCUR:


HILL, P. J.


POOCHIGIAN, J.